UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MICHAEL FACIANE** | * | **CIVIL ACTION NO.:** |
| | * | |
| **VERSUS** | * | **JUDGE** |
| | * | **SECTION " "** |
| **SUN LIFE ASSURANCE** | * | |
| **COMPANY OF CANADA** | * | **MAG. JUDGE** |
| | * | **DIVISION " "** |

* * * * * * * * * * * * * * * * *

## COMPLAINT

NOW INTO COURT, comes Petitioner, Michael Faciane, who respectfully alleges:

1.

This is a claim for ERISA long term disability benefits.

2.

This Court has jurisdiction and venue under 29 U.S.C. §1001 *et seq.*; 29 U.S.C. §1132(e)(1)(2).

3.

The Parties to the suit are named as follows:

A. Petitioner, Michael Faciane, is a person of full age of majority and a resident of St. Tammany Parish, Louisiana; and

B. Defendant is Sun Life Assurance Company of Canada (hereinafter, "Sun Life"), a foreign insurance corporation authorized to do and doing business in the State of Louisiana.

4.

Petitioner, Michael Faciane, is a plan participant and a beneficiary of an ERISA plan created by his employer, Capital One Financial Corporation and an insured participant of a group disability policy issued by Sun Life.

5.

Defendant, Sun Life, issued a group policy, no. 46228, insuring the employees of Capital One Financial Corporation.  Petitioner is a beneficiary and insured under the policy

6.

ERISA mandates that all plan administrators discharge their duties in the interest of plan participants and beneficiaries. 29 U.S.C.A. §1104(a)(1).

7.

Petitioner filed a claim for disability benefits with the plan, because a work-related injury in approximately June of 2006 prevented him from continuing to perform the duties of his job as a Section Leader for Consumer Collections.

8.

In accordance with the terms of the policy and Petitioner's position with his employer, Petitioner elected to purchase additional long-term disability. Petitioner was classified as a "3 non-sales employees electing buy-up."  As such, the terms of the policy entitled him to receive "66.67% (benefit percentage) of your total monthly earnings, not to exceed the maximum monthly ($15,000.00), less other income benefits."

9.

In addition, the Benefits Highlights booklet that was provided to Petitioner and in effect on the date of Petitioner's accident and claim for disability benefits, June of 2006, defined Total Monthly Earning as follows:

"Total Monthly Earnings

Your basic monthly earnings as reported by your Employer immediately before the first date your Total or Partial disability begins.  Total Monthly Earnings includes bonuses, but does not include commissions, overtime pay, or any other extra compensation.

If your current monthly earnings includes bonuses, your Total Monthly Earnings will be averaged over the previous 12 month period of your employment before the first date your Total or Partial Disability begins or will be averaged from your date of employment, whichever is less.

If you are paid on an hourly basis, your Total Monthly Earnings will be based on your hourly rate of pay, but will not exceed 40 hours per week."

While the Policy defined the term Total Monthly Earning as:

"Total Monthly Earnings means the Employee's average monthly earnings as reported by the Employer on the January 1st prior to the date Total or Partial Disability begins.  Total Monthly Earnings includes commissions, bonuses, overtime, incentive pay, and shift differential but does not include any other extra compensation.

If the Employee's current salary includes commissions, bonuses, overtime or incentive pay will be averaged over the previous 12 months as determined by the Employer on the January 1st of each year."

10.

The Benefits Highlights booklet and the Policy at issue did not define the terms "bonus," "commissions," "overtime pay," "incentive pay," "shift differential," or "other extra compensation."

11.

Sun Life received satisfactory Proof of Claim and began paying disability benefits to the Petitioner.

12.

Petitioner's Total Monthly Earnings were calculated by Sun Life to be $3,442.94. According to a review by a CPA contracted by the Employer the basic LTD benefits were calculated as follows:

"The payroll records indicate that Mr. Faciane's base semi-monthly as of January 1, 2006, was $1,833.33 per pay period.  The records also indicate that he received

"collection incentives" which are required to be averaged over the 12 months from July 2005 through June 2006. There were no other qualifying bonuses, overtime, or incentive pay which would be included in his Total Monthly Earnings. Note that the amount received for moving/transition expenses and identified as "Relo Transition Bonus" would be considered other extra compensation and would not be included in his Total Monthly Earnings.

Mr. Faciane's "collection incentives for July 2005 through June 2006 totaled $17,710.00, an average of $1,467.50 per month. His Total Monthly Earnings is calculated as follows:

| | |
|---|---|
| Average Semi-Monthly Salary as of 1/1/06: | $ 1,833.33 |
| x 24 Pay Periods: | x      24 |
| Basic Annual Earnings: | $43,999.92 |
| ÷ 12 Months: | ÷      12 |
| Average Monthly Regular Earnings: | $ 3,666.66 |
| Average Monthly Collections Incentives: | $ 1,467.50 |
| Total Monthly Earnings: | **$ 5,134.16**" |

13.

Petitioner's policy yielded a monthly benefit of 66.67% of his Total Monthly Earnings, or $3,422.94, according to Sun Life. Over the years, Petitioner's claim has been subject to different offsets reducing the amount of the benefit owed.

14.

Petitioner avers that Defendant miscalculated his Total Monthly Earnings due to the apparent ambiguities in the policy. Specifically, the Benefits Highlights booklet provided to Petitioner provided that the basic monthly earnings would be calculated based on the Petitioner's earnings immediately before the disability began, not as reported by the Employer on the January 1 prior to the disability.

15.

This discrepancy in the language between the information provided to Petitioner and the actual policy language, yields different basic monthly earnings amounts as Petitioner received a salary increase after January 1, 2006; thus, Petitioner avers that the correct basic monthly earnings amount should be calculated based on the Petitioner's basic monthly earnings immediately before the disability began, or $4,583.34, in accordance with the doctrine of *contra proferentem*.

16.

Petitioner further avers that both Defendant and Petitioner understood the monthly amount received in addition to his base pay, termed "collections incentive" by Sun Life was included in the calculation of Total Monthly Earnings.  Further, both Petitioner and Defendant understood that the correct timeframe for calculating that amount included payments from July 2005 through June 2006.

17.

The policy failed to define the term "bonus."  This ambiguity should also be interpreted against the drafter in accordance with the doctrine of *contra proferentem*.

18.

On December 5, 2005, Petitioner was offered a "bonus" as part of a transition and relocation package.  Petitioner was informed by his Employer that the package offered was a "bonus."  The Employer's own documentation refers to same as a bonus.  As such, the "Relo Transition bonus" Petitioner received on February 16, 2016, should also be included in the calculation of his Total Monthly Earnings.

19.

Petitioner appealed the calculation of Total Monthly Earnings, but Sun Life upheld its decision regarding the calculation of Total Monthly Earnings.

20.

Defendant abused its discretion and failed to provide evidence regarding its determination. Specifically, Defendant abused its discretion by failing to include the "Relo Transition bonus" Petitioner received as a "bonus," and by calculating his basic monthly earnings from January 1st and not the date immediately prior to the disability.

21.

Petitioner has exhausted his administrative remedies and now timely files this suit to reverse Sun Life's improper calculation of his Total Monthly Earnings.

22.

Furthermore, Sun Life administered Petitioner's claim with an inherent and structural conflict of interest as Sun Life is liable to pay benefits from its own assets.

23.

Sun Life failed to give the policy uniform construction and interpretation.

24.

Petitioner has suffered and will continue to suffer economic loss due to the miscalculation of Total Monthly Earnings.

25.

Petitioner is entitled to an award of interest on all benefits that should have been paid but for Son Life's failure to fairly administer the policy.

26.

In addition, Defendant's actions caused Petitioner to hire attorneys to represent him in this matter to recover benefits due to him under the policy.

**WHEREFORE**, Petitioner, Michael Faciane, prays for judgment against Defendant, Sun Life Assurance Company of Canada, as follows:

1. For all benefits due Petitioner in the past and future under the Policy, plus pre- and post-judgment interest;

2. For all reasonable attorney's fees;

3. For costs of suit; and

4. For all other relief as the facts and law may provide.

Respectfully submitted,

**LEWIS & CAPLAN**
A Professional Law Corporation

*/s/Pete Lewis*
**PETE LEWIS** (#8848)
**SARAH DELAHOUSSAYE CALL** (#34475)
3631 Canal Street
New Orleans, Louisiana 70119
Telephone: (504) 486-7766
Facsimile: (504) 486-7769
Email: pl@lewis-caplan.com; sdc@lewis-caplan.com
Counsel for Petitioner