UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL FACIANE | CIVIL ACTION |
| VERSUS | No. 17-17429 |
| SUN LIFE ASSURANCE CO. OF CANADA | SECTION I |

## ORDER AND REASONS

Plaintiff Michael Faciane ("Faciane") receives a monthly benefit for long-term disability pursuant to an ERISA-regulated group insurance policy covering employees of Capital One Financial Corporation ("the policy"). He alleges that the policy administrator, defendant Sun Life Assurance Company of Canada ("Sun Life"), has underpaid him since he began receiving the benefit due to a miscalculation of a key input in the formula used to determine one's benefit amount.

Before the Court is Sun Life's motion[1] for summary judgment on the issue of timeliness. Faciane opposes[2] the motion.

### I.

For purposes of the present motion, the following facts are not in genuine dispute:

---

[1] R. Doc. No. 6. Sun Life originally filed the motion as a motion to dismiss, but because the Court concluded that sound resolution of the motion required considering material attached to the motion and not mentioned in Faciane's complaint, the Court converted the motion into a motion for summary judgment. *See* R. Doc. No. 17; *see also* Fed. R. Civ. P. 12(d).
[2] R. Doc. No. 10.

1

Faciane sustained a work-related injury in June 2006. He later filed a claim under the policy for a long-term disability benefit.

Sun Life approved Faciane's claim in March 2008.[3] Sun Life determined that Faciane "ha[d] been unable to work due to [his] disability effective July 4, 2006," and that, under the terms of the policy, his benefits began on December 1, 2006.[4]

Initially, Faciane was approved to receive "a gross benefit of $100.00 (minimum monthly benefit)."[5] In a March 31, 2008 letter informing Faciane of the approval of his claim, Sun Life explained to Faciane how it had calculated this benefit amount.[6] Faciane did not administratively challenge this calculation until June 26, 2017.[7] After this challenged failed, Faciane initiated this case on December 18, 2017.

## II.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment alays bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not produce evidence negating the existence of material fact, but need only point out the absence

---

[3] *See* R. Doc. No. 6-3, at 1; *see also* R. Doc. No. 10, at 1.
[4] R. Doc. No. 6-3, at 1.
[5] *Id.*
[6] *See id.*
[7] *See* R. Doc. No. 6-4.

of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its initial burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue of material fact is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* However, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

Moreover, "[a]lthough the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (quoting 11 Moore's Federal Practice–Civil ¶ 56.91 (2017)). "This flexibility allows the court to

consider the evidence that would likely be admitted at trial . . . without imposing on parties the time and expense it takes to authenticate everything in the record." *Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017).

### III.

### A.

Sun Life argues that this case is untimely. It points out that the policy "contains a contractual limitations period requiring [Faciane to have] file[d] suit within three years of when 'Proof of Claim is required.'"[8] According to Sun Life, "Proof of Claim was required by March 2, 2007, and, therefore, [Faciane] was required to [have] file[d] a lawsuit by March 2, 2010, to challenge the benefit calculation."[9] Because Faciane did not do so, Sun Life maintains that Faciane has lost the right to bring his miscalculation claim in court.

The policy provides, in a subsection titled "Legal Proceedings":

No legal action may start:

1. until 60 days after Proof of Claim has been given; nor

2. more than 3 years after the time Proof of Claim is required.[10]

According to the policy, "Proof of Claim" for a long-term disability benefit had to "be given to Sun Life no later than 90 days after the end of the Elimination Period."[11] "Elimination Period" is then defined as "a period of continuous days of [t]otal or

---

[8] R. Doc. No. 6-1, at 1.
[9] *Id.*
[10] R. Doc. No. 6-2, at 64.
[11] *Id.* at 65. According to the policy, "[i]f it is not possible to give proof within th[is] time limit[ ], it must be given as soon as reasonably possible." *Id.*

4

[p]artial [d]isability for which no [long-term disability] [b]enefit is payable."[12] This period "begins on the first day of [t]otal or [p]artial [d]isability."[13] For purposes of long-term disability, the "Elimination Period" is 150 days.[14]

It is not genuinely disputed that Sun Life determined that July 4, 2006 is the date on which Faciane became unable to work due to his disability.[15] Thus, the "Elimination Period" ended on November 30, 2006.[16] Under the terms of the policy, Faciane's "Proof of Claim" was required by early March 2007, and so the policy's bar on the initiation of a legal action "more than 3 years after the time Proof of Claim is required" took effect in early March 2010—years before Faciane initiated this case.

**B.**

"Absent a controlling statute to the contrary, a participant and a[n] [ERISA-regulated] plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105-06 (2013). Worded differently, courts "must give effect to [a plan's] limitations provision unless [the court] determine[s] either that the period is unreasonably short, or that a 'controlling statute' prevents the limitations provision from taking effect." *Id.* at 109.

---

[12] *Id.* at 15.
[13] *Id.*
[14] *Id.* at 6.
[15] R. Doc. No. 6-3, at 1.
[16] The March 31, 2008 letter identifies December 1, 2006 as the date on which Faciane's benefits began. R. Doc. No. 6-3, at 1.

5

In this case, no party points to a "controlling statute" that would trump the policy's limitations period.

Faciane acknowledges that "cases have determined that [ ] a contractual limitation [like the one in the policy] is reasonable."[17] Indeed, the Supreme Court itself has upheld the enforceability of a limitations provision in an ERISA-regulated plan that is materially indistinguishable from the one in the policy. *See id.* at 102.[18]

However, Faciane contends that the policy's limitations provision "is unreasonable in light of the facts pertaining to the claim at issue in this matter"— namely, Faciane's miscalculation claim.[19] Thus, the Court will consider the application of the policy's limitations provision to such a claim. In the process, the Court will consider the policy as written, but with an eye towards its implementation by Sun Life on the ground. The Court will also consider the point at which a plan participant's cause of action accrues, and the length of the administrative process within which a plan participant must engage prior to filing suit.[20] *See id.* at 105-10.

In cases involving denials of benefits, "a cause of action accrues after a claim for benefits has been made and formally denied." *Harris Methodist Fort Worth v.*

---

[17] R. Doc. No. 10, at 6.
[18] The limitations provision at issue in *Heimeshoff* provided the following: "Legal action cannot be taken against The Hartford . . . [more than] 3 years after the time written proof of loss is required to be furnished according to the terms of the policy." *Heimeshoff*, 571 U.S. at 103.
[19] R. Doc. No. 10, at 6.
[20] The Court notes that "[t]he exhaustion doctrine is applicable to suits brought under ERISA." *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 231 (5th Cir. 1997); *see also Heimeshoff*, 571 U.S. at 105 ("ERISA and its regulations require plans to provide certain presuit procedures for reviewing claims after participants submit proof of loss (internal review).").

6

*Sales Support Servs. Inc. Employee Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005). With respect to the accrual of an ERISA miscalculation claim, however, it appears that the Fifth Circuit has not established a clear rule. Nor does Fifth Circuit precedent establish whether it is appropriate to apply a continuing-violation theory to the accrual of such a claim. *See Berry v. Allstate Ins. Co.*, 84 Fed. App'x 442, 444 (5th Cir. 2004) (per curiam) ("Initially, we have never applied the continuing violations exception in the context of an ERISA case. The parties do not address whether the continuing violations exception should be applied in ERISA cases, rather they simply argue whether the exception is applicable based on the facts of this case. Berry's claim, however, fails even if the exception is applied, thus we need not decide whether the continuing violations exception is applicable in § 510 ERISA cases, and assume for purposes of this analysis that the continuing violations exception is applicable in § 510 ERISA cases.").

Yet the Court is not without guidance, as other circuits have given these issues due consideration. In *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516 (3d Cir. 2007), the Third Circuit applied the so-called "clear repudiation concept" and concluded that "an erroneously calculated award of benefits under an ERISA plan can serve as an event other than a denial that triggers the statute of limitations, as long as it is (1) a repudiation (2) that is clear and made known to the beneficiary." 475 F.3d at 521 (internal quotation marks omitted).

The Third Circuit went on to hold that the *Miller* participant's "cause of action to adjust benefits accrued upon his initial receipt of the erroneously calculated

7

award," because "[t]he award he began receiving . . . constituted a repudiation of his right to greater payment under the [ ] plan" and the facts of the case suggested that "[t]his repudiation should have been clear to him upon initial receipt of payment." 475 F.3d at 522. In the process, the Third Circuit "decline[d] to adopt a 'continuing violation theory' whereby a new cause of action would accrue upon each underpayment of benefits owed under the plan." *Id.*

In *Novella v. Westchester Cty.*, 661 F.3d 128 (2d Cir. 2011), the Second Circuit struck a similar chord, holding that "notice of a miscalculation can be imputed to a pensioner—and the statute of limitations will start to run—when there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation." 661 F.3d at 147. The Second Circuit explained its reasoning as follows:

> We think this method best balances a pension plan's legitimate interest in predictability and finality with a pensioner's equally legitimate interest in having a fair opportunity to challenge a miscalculation of benefits once it becomes known—or should have become known—to him. Stated another way, this case-by-case reasonableness inquiry mitigates some of the harshness of the defendants' proffered approach, while better respecting the defendants' interests in finality and repose than the district court's and [the plaintiff's] chosen method.[21]

*Id.* Like the Third Circuit in *Miller*, the Second Circuit expressly rejected the application of the continuing-violation theory in the context of an ERISA miscalculation claim, noting that the theory "is not as clear a fit in cases where . . .

---

[21] To the *Novella* panel, its method was "consistent with the Third Circuit's reasoning in *Miller*, which [it] read to endorse not a strict first-payment theory . . . but rather a similar reasonableness approach." 661 F.3d at 147.

8

the plaintiff['s] claims are based on a single decision that results in lasting negative effects." *Id.* at 146 (internal quotation marks omitted) (alteration in original).

When faced with various species of ERISA claims, other circuits have followed a similar path in declining the continuing-violation theory. *See, e.g.*, *Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 139-40 (1st Cir. 2005) ("While Plaintiffs may have felt the ongoing effects of their ineligibility for ERISA benefits every time they received a paycheck from a third-party payroll agency, Plaintiffs' own allegations make clear that Defendants' wrongful conduct, if any, involved the misclassification of Plaintiffs as off-payroll employees at their time of hire in April 1994. The district court properly dismissed Plaintiffs' ERISA § 510 claim as time-barred."); *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1332 (9th Cir. 1996) (per curiam) ("[T]his Circuit has expressly rejected the continuing violation theory in an ERISA benefit case arising under § 1113(a)(2). . . . Although [Appellants] now contend that each and every time that they were entitled to a reimbursement payment it constituted a new and separate breach of ERISA by Appellants, the applicable four-year statute of limitations begins to run when a plaintiff knows or has reason to know of the injury that is the basis of the action." (internal quotation marks omitted)); *but see Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1423 (9th Cir. 1988) ("Each check issued to him in an amount reduced under the inoperative amendment constitutes a fresh breach by the trustees of their duty to administer the pension plan in accordance with the documents and instruments of the Plan that are not inconsistent with ERISA, as required by 29 U.S.C. §

1104(a)(1)(D). A separate cause of action arises with the issuance of each check, and the limitations period runs separately for each cause of action.").

The Court finds the reasoning offered by the Second and Third Circuits in analogous cases to be persuasive. The Court will thus consider "when there [was] enough information available to [Faciane] to assure that he [knew] or reasonably should [have known] of the [alleged] miscalculation." *Novella*, 661 F.3d at 147; *cf. Miller*, 475 F.3d at 521 (requiring "(1) a repudiation (2) that is clear and made known to the beneficiary"). The Court will not apply the continuing-violation theory, as numerous circuits have convincingly rejected its applicability in the context of ERISA miscalculation claims.[22]

In a letter dated March 31, 2008, Sun Life notified Faciane that he was eligible for a long-term disability benefit. This letter also detailed how Sun Life calculated his benefit. Importantly, the letter informed Faciane that Sun Life had calculated his "Basic Monthly Earnings" to be $5,134.16.[23]

Faciane "maintains that the calculation of [this amount] [has been] incorrect since the inception of his claim."[24] Specifically, according to Sun Life, "if [it] had done the calculations as [Faciane] [now] contends it should have, the number next to 'Basic Monthly Earnings'[ ] would have been $8,118.52[,] not $5,134.16."[25]

---

[22] In any event, Faciane has not argued that the theory applies and thus has waived the argument that it does.
[23] In his complaint Faciane, refers to this amount as his "Total Monthly Earnings." *See* R. Doc. No. 1, at 4.
[24] R. Doc. No. 10, at 4.
[25] R. Doc. No. 15, at 3.

Faciane offers no explanation either in his complaint or in his filings with respect to the present motion as to why the information available to him in 2008 was insufficient to put him on notice of an alleged miscalculation of this magnitude.[26] This is perhaps at least in part because Faciane's complaint points to "the Benefits Highlights booklet that was provided to [him] and in effect on the date of [his] accident and claim for disability benefits"—as well as language alleged to be ambiguous in the policy itself—as the basis for his challenge to Sun Life's calculation of his "Basic Monthly Earnings."[27] In other words, his present challenge to the initial 2008 calculation of his "Basic Monthly Earnings" is based on sources that were available to him *in 2008*.

The Court concludes that Faciane had "enough information available to [him] to assure that he [knew] or reasonably should [have known] of the [alleged] miscalculation" at the time that he received Sun Life's March 31, 2008 letter. *Novella*, 661 F.3d at 147. The Court presumes receipt of this letter by Faciane three days after it was placed in the mail.[28] *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263,

---

[26] Instead, Faciane focuses on events affecting his long-term disability benefit that took place in the years after he began receiving the benefit. *See* R. Doc. No. 10, at 6-8. These events, however, are not material to the one and only claim that Faciane pleads in his complaint: the *initial* alleged miscalculation of his "Basic Monthly Income" in 2008.

[27] R. Doc. No. 1, ¶ 9; *see also id.* ¶¶ 10, 14-15.

[28] In an affidavit filed with the Court, Faciane states that he did not receive this letter. *See* R. Doc. No. 19-1, at 1. This statement appears to contradict his opposition to the present motion. *See* R. Doc. No. 10, at 1-2. Faciane's opposition states that Faciane's "long-term disability benefits were not approved until March 31, 2008, at which time [ ] Faciane was advised that he would only receive the minimum benefits and was provided documentation regarding the percentage salary he was entitled to receive." *Id.* The opposition then goes on to discuss the "initial letter of March 31,

2008," which "advis[ed]" Faciane "that his benefits had been approved" and advised Faciane how his benefits were calculated. *Id.* at 2. The Court "can appropriately treat statements in briefs as binding judicial admissions of fact." *City Nat. Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990).

In any event, "[w]hen doubt exists as to whether an addressee received a letter, [the Fifth Circuit has] applied the mailbox rule, which provides that '[p]roof that a letter properly directed was placed in a U.S. post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed.'" *Gamel v. Grant Prideco, L.P.*, 625 Fed. App'x 690, 694 (5th Cir. 2015) (per curiam) (quoting *United States v. Ekong*, 518 F.3d 285, 287 (5th Cir. 2007) (per curiam)) (alteration in original in part). "A sworn statement is credible evidence of mailing for the purposes of the mailbox rule." *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 420 (5th Cir. 2007) (brackets and quotation marks omitted). In addition, "[p]lacing a letter in the mail may be proved by circumstantial evidence, such as evidence of the sender's standard mailing practices." *Gamel* 625 Fed. App'x at 694. Where established, "[t]he addressee's 'bare assertion of non-receipt' is insufficient to rebut the assumption." *United States v. Ekong*, 518 F.3d 285, 287 (5th Cir. 2007) (per curiam) (quoting *Custer*, 503 F.3d at 421).

In this case, the summary judgment evidence establishes the presumption, and Faciane's unsupported assertion of non-receipt cannot rebut it. In an affidavit filed with the Court, a Sun Life employee named Susan Everhart ("Everhart") explains Sun Life's procedures for communicating with claimants and documenting those communications. Specifically, she explains the procedures that Sun Life claims handlers followed in 2008 upon approving a claim. *See* R. Doc. No. 20-1, ¶ 4. Everhart then states that Faciane's claims handler at the time "followed these procedures in connection with the March[ ] 31, 2008 approval letter." *Id.* ¶ 6. She came to this conclusion upon a review of the Faciane's claims file, including the electronic claims notes in the file, which she attached to her affidavit. *See id.* at 7-29.

Faciane also filed these notes with the Court and asks the Court to consider them in connection with the present motion. *See* R. Doc. No. 19-2, at 1-23. "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee*, 859 F.3d at 355. Regardless of the admissibility of the notes, testimony by Sun Life employees who worked with Faciane's file would be admissible. *Cf. id.* (faulting the district court for dismissing an expert's report on a summary judgment motion "solely because it was not sworn without considering [the] argument that [the expert] would testify to those opinions at trial and without determining whether such opinions, as testified to at trial, would be admissible"). In any event, both parties have requested that the Court consider them in resolving Sun Life's motion.

While Faciane points to entries in these notes that document instances where he expressed frustration with Sun Life's communication practices, *see, e.g.*, R. Doc. No. 19-2, at 15, entries in spring 2008 in fact corroborate Sun Life's mailing of the

12

267 (5th Cir. 2015) ("We have repeatedly noted that a three-day presumption [of receipt] is permissible, and have applied such a presumption.").

Under the terms of the policy, Faciane's claim was not time-barred until early March 2010. Thus, Faciane had about two years in which to administratively challenge the calculation of his "Basic Monthly Earnings" and, depending on the outcome, bring suit.

The policy provides that a plan participant may request that Sun Life review the denial of "all or any part of a claim" within 180 days after receiving notice of such denial.[29] Sun Life will then complete the review within a maximum of 90 days.[30] No party has suggested that Sun Life does not abide by these policy terms, or that the actual average length of Sun Life's internal review process effectively precludes plan participants such as Faciane from bringing their claims in court within the contractual limitations period. *See Heimeshoff*, 571 U.S. at 110 ("In the absence of any evidence that there are [ ] obstacles to bringing a timely § 502(a)(1)(B) claim, [such as an administrative review process so long that a plan participant has little change of bringing a timely claim,] we conclude that the Plan's limitations provision

---

March 31, 2008 letter and Faciane's receipt of it. *See id.* at 5 (May 22, 2008 entry by Marie Baker) ("I told him I would *resend* his approval letter because *he* couldn[']t *find* it . . . ." (emphasis added). In short, Faciane has not demonstrated that a genuine dispute of material fact defeats application of the mailbox rule.

    Finally, the Court points out that these notes show that Faciane was questioning Sun Life's calculation of his long-term disability benefit as early as April or May 2008. *See id.* Thus, even if the Court disregards the March 31, 2008 letter from Sun Life, the notes indicate that Faciane was aware of a potential miscalculation of his benefit within two months of the benefit's approval.

[29] R. Doc. No. 6-2, at 67.
[30] *Id.* (providing an initial 45-day review period, with a possible 45-day extension).

13

is reasonable."). Therefore, it is reasonable to assume that Faciane would have had at least a year, and most likely longer, within which to file his case in court had he timely raised an administrative challenge to Sun Life's calculation.[31] Faciane "does not dispute that a hypothetical 1-year limitations period commencing at the conclusion of internal review would be reasonable." *Id.* at 109.

In a last-ditch effort to prevent dismissal of his case on untimeliness grounds, Faciane argues that "estoppel should apply in this matter to prevent [Sun Life] from invoking the limitations provision as a defense."[32] "If the [ERISA plan] administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations provision as a defense." *Id.* at 114. The Fifth Circuit has held that, "[t]o establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005). Both Faciane and Sun Life treat this standard as applicable in this case.[33] Faciane has not met it.

Without addressing the first two elements, Faciane has not demonstrated "extraordinary circumstances." "The Fifth Circuit has not defined what constitutes

---

[31] Moreover, the Court notes that, in instances where a limitations provision does in fact operate to effectively preclude the timely filing a claim, "courts are well equipped to apply traditional doctrines that may nevertheless allow participants to proceed." *Heimeshoff*, 571 U.S. at 114.
[32] R. Doc. No. 10, at 10.
[33] *See id.* at 10-11; R. Doc. No. 15, at 8-10.

14

'extraordinary circumstances' for the purposes of ERISA estoppel." *Hughes v. Life Ins. Co. of N. Am.*, No. 15-2941, 2016 WL 5231811, at *9 (E.D. La. Sept. 22, 2016) (Fallon, J.) (citing *High v. E-Sys. Inc.*, 459 F.3d 573, 580 n.3 (5th Cir. 2006)). "However, the Third Circuit has explained that this 'generally involve[s] acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud.'" *Id.* (quoting *Jordan v. Fed. Exp. Corp.*, 116 F.3d 1005, 1011 (3d Cir. 1997)). Faciane has not alleged facts from which it would be reasonable to infer that such circumstances are implicated in this case.

### III.

In short, the Court concludes that the application the limitations period defined in the policy is enforceable and that Faciane's miscalculation claim against Sun Life is thus time-barred. Accordingly,

**IT IS ORDERED** that Sun Life's motion is **GRANTED** and that this case is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, June 12, 2018.

```
                                  _____
                                     LANCE M. AFRICK
                               UNITED STATES DISTRICT JUDGE
```

15