UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL FACIANE                                             CIVIL ACTION

VERSUS                                                       No. 17-17429

SUN LIFE ASSURANCE CO.                                       SECTION I
OF CANADA

## ORDER & REASONS

Before the Court is plaintiff Michael Faciane's ("Faciane") motion[1] for reconsideration. Faciane requests that the Court reconsider and reverse its grant of summary judgment in favor of defendant Sun Life Assurance Company of Canada ("Sun Life"). For the following reasons, the motion is denied.

## I.

Faciane sustained a work-related injury in June 2006.[2] As a result, he filed a claim for long-term disability benefits under an ERISA-regulated group insurance policy covering Capital One Financial Corporation employees ("the policy").[3] Sun Life is the policy administrator.[4] Sun Life approved Faciane's claim in March 2008, determining that Faciane "ha[d] been unable to work due to [his] disability effective July 4, 2006," and that, under the terms of the policy, his benefits were payable beginning on December 1, 2006.[5]

---

[1] R. Doc. No. 26.
[2] R. Doc. No. 1, at 2.
[3] *Id.* Capital One Financial Corporation is Faciane's employer. *Id.* at 7.
[4] *See id.* at 1–2.
[5] R. Doc. No. 6-3, at 1.

Initially, Faciane was approved to receive "a gross benefit of $100.00 (minimum monthly benefit)."[6] In a letter dated March 31, 2008, Sun Life informed Faciane that his claim had been approved and explained how it had calculated the award.[7] Faciane did not administratively challenge the initial calculation of his benefits until June 26, 2017, more than nine years after his claim was approved.[8] On appeal, Sun Life upheld its original calculation, after which Faciane initiated this lawsuit.[9] Sun Life then filed a motion for summary judgment, which the Court granted, dismissing Faciane's claims as untimely.[10]

Faciane now requests that the Court reconsider its granting of summary judgment in favor of Sun Life on the basis that the Court purportedly "misapplied the law governing the accrual of an ERISA claim based on miscalculation of benefits."[11]

## II.

The Federal Rules of Civil Procedure do not expressly recognize motions for reconsideration. *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000). The question of which procedural rule applies depends on the timing of such a motion. *Sentry Select Ins. Co. v. Home State Cty. Mut. Ins. Co.*, 582 F. App'x 284, 286 (5th Cir. 2014) (quoting *Lavaspere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990)). A motion for reconsideration filed within twenty-eight days of the

---

[6] *Id.*
[7] *See generally* R. Doc. No. 6-3.
[8] R. Doc. No. 6-4, at 1; *see also* R. Doc. No. 1, at 6.
[9] R. Doc. No. 1, at 6.
[10] R. Doc. No. 23, at 15.
[11] R. Doc. No. 26, at 1.

2

district court judgment being challenged is characterized as a motion to alter or amend the judgment and construed pursuant to Rule 59(e). *See id.* A motion for reconsideration filed more than twenty-eight days after the judgment is treated as a Rule 60(b) motion for relief from judgment. *See id.*; *see also Morris v. Gulf Coast Rail Grp., Inc.*, No. 07-5453, 2010 WL 2990069, at *1 (E.D. La. July 26, 2010) (Africk, J.). Faciane filed this motion on June 22, 2018, within twenty-eight days of the Court's order.[12] Accordingly, a Rule 59(e) analysis is appropriate.

A motion pursuant to Rule 59(e) "calls into question the correctness of a judgment." *Molina v. Equistar Chems. LP*, 261 F. App'x 729, 733 (5th Cir. 2008) (citing *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004)). "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir.1989)). Thus, "a Rule 59(e) motion 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 568 (5th Cir. 2003) (citing *Rosenzweig v. Azurix Corp.*, 332 F.2d 854, 863–64 (5th Cir. 2003)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citation omitted).

---

[12] R. Doc. No. 23.

## III.

In his present motion, Faciane characterizes the Court's order granting summary judgment in favor of Sun Life as a "misappli[cation] of the governing law."[13] Specifically, Faciane contends that the Court erred in concluding that his claim for miscalculated benefits accrued "when there [was] enough information available to [him] to assure that he [knew] or reasonably should [have known] of the [alleged] miscalculation."[14] In support of his position, Faciane relies exclusively—and for the first time—on the Ninth Circuit's opinion in *Withrow v. Halsey*.[15] Based on *Withrow*, Faciane argues that his claim did not in fact accrue until September 2017 and that, as a result, his lawsuit was timely.[16]

In response, Sun Life argues that Faciane has not met the Rule 59(e) standard because his motion is "based on an extra-circuit, non-binding case that [Faciane] had every opportunity to cite prior to this Court's entry of judgment."[17] According to Sun Life, any reconsideration of the Court's order based on Faciane's presentation of a new case "is an affront to the finality principles that underlie Fifth Circuit jurisprudence."[18] Additionally, Sun Life argues that, because *Withrow* is not binding

---

[13] R. Doc. No. 26-1, at 2.
[14] *Id.*; R. Doc. No. 23, at 10 (quoting *Novella v. Westchester City*, 661 F.3d 128 (2d Cir. 2011)).
[15] *See generally* R. Doc. No. 26-1 (summarizing and discussing *Withrow v. Halsey*, 655 F.3d 1032 (9th Cir. 2011)).
[16] *Id.* at 4.
[17] R. Doc. No. 28, at 1. In the alternative, Sun Life argues that *Withrow* is distinguishable from the present case. *Id.* at 7–9. The Court agrees; however, Faciane's motion for reconsideration fails for other reasons explained herein.
[18] *Id.* at 3.

on the Court, the Court's grant of summary judgment does not constitute a "manifest error of law" that would warrant reconsideration.[19]

Faciane implores the Court to reconsider its prior ruling based on the presentation of new case law, but a motion for reconsideration "is not the proper vehicle for rehashing . . . legal theories[] or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 478–79; *see also Namer v. Scottsdale Ins. Co.*, 314 F.R.D. 392, 395 (E.D. La. April 5, 2016) (Africk, J.) (quoting *LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005)) ("A motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments.").

Faciane has already had multiple opportunities to brief the Court on the issue of when a claim for the miscalculation of benefits accrues under ERISA. Sun Life first raised the issue in its motion for summary judgment filed on April 2, 2018.[20] In his response, Faciane urged the Court to reject the clear repudiation rule and cited cases to support his argument that a miscalculation claim does not accrue until a benefits recipient challenges the original calculation and is informed that the calculation was correct.[21] Faciane then filed a second opposition to the motion for summary judgment over one month later. In that opposition, he did not provide any additional information or cite new cases regarding the issue of accrual and the clear repudiation rule.[22] In fact, neither filing mentions *Withrow*.

---

[19] *Id.* at 4.
[20] *See* R. Doc. No. 6-1, at 6–10.
[21] R. Doc. No. 10, at 4–5.
[22] *See generally* R. Doc. No. 19. Originally, Sun Life filed a motion to dismiss, and Faciane timely responded. R. Doc. No. 10. However, the Court later converted Sun

5

Faciane has never cited or discussed *Withrow* until now, but *Withrow* was not decided in the interim period between the Court's grant of summary judgment and Faciane's motion for reconsideration.[23] *Withrow* has been available to Faciane during the entire course of this litigation. If Faciane believed *Withrow* to be the most compelling case to persuade the Court to adopt the Ninth Circuit's approach, he should have brought the case to the Court's attention before the Court ruled on the motion for summary judgment.

In short, Faciane argues that the Court should reevaluate its previous decision embracing the Second and Third Circuits' reasoning and ultimately applying the Second Circuit's standard. After determining that the Fifth Circuit had not yet established a clear rule with respect to the accrual of a benefits miscalculation claim under ERISA, the Court evaluated the case law in circuits that have addressed the issue. The Court ultimately concluded that the rationale behind the Second and Third Circuits' substantially similar approaches was the most compelling. Faciane now argues that the Court should reverse course. The Court declines to do so.

## V.

Faciane also argues that *Miller v. Fortis Benefits Insurance Co.*—a Third Circuit case the Court discussed in its original order—"has no application in the present matter."[24] The Court disagrees. The Court ultimately applied the Second

---

Life's motion into a motion for summary judgment, and Faciane subsequently submitted another response. R. Doc. No. 19.
[23] *Withrow* was decided in 2011, almost seven years ago.
[24] *See* R. Doc. No. 26-1, at 14 n.66 ("*Miller* has no application in the present matter, as there is nothing in Sun Life's March 31, 2008 letter that made it 'clear' and 'known'

6

Circuit's test; however, applying either the Second or the Third Circuit's standard for the accrual of a benefits miscalculation claim under ERISA, Faciane's claim is time-barred.[25]

### A.

Under the Third Circuit's approach in *Miller*, "an erroneously calculated award of benefits under an ERISA plan can serve as 'an event other than denial' that triggers the statute of limitations, as long as it is (1) a repudiation (2) that is clear and made known to the beneficiary." *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 521 (5th Cir. 2007). According to Faciane, the language in Sun Life's March 2008 letter approving his claim for benefits cannot constitute a repudiation that was "clear" or "known" to him.[26] Specifically, he refers to portions of the letter in which Sun Life explains that his benefits were calculated "based on the information [Sun Life had] currently in [his] file."[27] Faciane argues that his claim for adjusted benefits had not been repudiated under the *Miller* standard because "the language . . . indicates that not even Sun Life had made a final determination concerning the appropriate calculation of [his] benefits."[28]

---

to Mr. Faciane that his claim for adjusted benefits was being either denied or repudiated.").
[25] Notably, Faciane does not contend in his present motion that the Court misapplied the Second Circuit's standard. In fact, he does not mention *Novella* or discuss any Second Circuit case law. The Court will nonetheless elaborate on its prior order to demonstrate that—under any of the nuanced approaches this Court cited approvingly in its order granting summary judgment in favor of Sun Life—the Court properly ruled that Faciane's lawsuit was untimely.
[26] R. Doc. No. 26-1, at 14.
[27] *Id.* at 3 (quoting R. Doc. No. 6-3, at 1).
[28] *Id.* at 3, 14.

7

However, Faciane misstates the clear repudiation rule, which requires a repudiation of the beneficiary's rights, *not* his claim for adjusted benefits. *See*, *e.g.*, *id.* at 521 ("[A]n underpayment is adverse to the beneficiary and therefore repudiates his rights under a plan."). *Miller* directly addressed erroneous calculations, characterizing any underpayments resulting from a miscalculation as "effectively a partial denial of benefits" constituting "a repudiation." *Id.* With respect to the second prong, "repudiation by underpayment should ordinarily be made known to the beneficiary when he first receives his miscalculated benefit award." *Id.* (citation omitted). "At that point, the beneficiary should be aware that he has been underpaid and that his right to a greater award has been repudiated." *Id.* at 522. Under *Miller*, underpayment is significant to establishing clear repudiation.

Thus, the Third Circuit held in *Miller* that the plaintiff should have known about the repudiation when he first began receiving allegedly inaccurate payments because "monthly checks based on a simple calculation of sixty percent of his salary should have alerted him that he was being underpaid." *Id.* at 522. "[T]he Third Circuit was persuaded that the plaintiff should have discovered his injury earlier, not just because he received a benefit that was too small, but because this benefit was based on a calculation simple enough that underpayment would have been readily discoverable or apparent to him." *Manus v. BP Corp. N. Am., Inc.*, No. 12-2521, 2013 WL 5278235, at *4–5 (E.D. Pa. Sept. 18, 2013).

Sun Life's March 2008 letter informed Faciane that his payments were based

8

on a similar calculation—a percentage of his basic monthly earnings.[29] Hence, Faciane "would not have had to make complex calculations to determine something was amiss." *Id.*; *see also Martin v. Prudential Ins. Co. of Am.*, No. 12-6208, 2013 WL 3354431, at *6 (D.N.J. July 2, 2013) (concluding that underpayment could have easily been discovered based on calculations listed in the award letter). Under *Miller*, the Court concludes that "repudiation should have been clear" upon receipt of the letter and that Faciane "provides no basis for us to infer that the repudiation was unclear to him at that time," particularly considering the magnitude of the alleged mistake. *Miller*, 475 F.3d at 522.

According to Faciane's 2017 appeal, he has been underpaid "since the inception of his claim."[30] Yet, Faciane has consistently failed to demonstrate why the information available to him in 2008 was insufficient to put him on notice of the alleged miscalculation at that time. *See Manus*, 2013 WL 5278235, at *5 ("[T]he entire reason that [the plaintiff's] suspicion was raised about a suspected underpayment was that he reviewed a document that was in his possession the entire time . . . . [His] claim for additional benefits, based on documents in his possession for years, is seemingly the precise situation that the Third Circuit developed the clear repudiation rule to avoid.") (citation omitted).

*Miller* aimed to avoid situations in which plaintiffs "could receive benefit checks for decades before deciding to investigate [their] accuracy." *Miller*, 475 F.3d at

---

[29] R. Doc. No. 1, at 4.
[30] R. Doc. No. 6-4, at 1.

9

522. To achieve this result, the Third Circuit requires benefits recipients to "exercise reasonable diligence to ensure the accuracy of [their] award[s]." *Id.* Faciane concedes that he has had access to the information that proves the miscalculation since 2008, when his request was first approved. Had Faciane exercised due diligence at that time, he likely would have discovered the erroneous calculation, and he would have had ample time to file an administrative appeal and, eventually, a timely lawsuit. Sun Life's letter notifying him of the initial calculation thus constituted clear repudiation of Faciane's rights under *Miller*. *See, e.g.*, *Riley v. Metro. Life Ins. Co.*, 744 F.3d 241, 245 (1st Cir. 2014) (holding that the first check the plaintiff received, although not a "complete repudiation or a formal denial of all LTD benefits," "was a clear repudiation of [his] assertion that he was entitled to more than the amount [the defendant] actually awarded"); *Ingraham v. Prudential Ins. Co. of Am.*, No. 12-682, 2013 WL 1909304, at *5 (W.D. Pa. March 7, 2013) (explaining that "Prudential's letter . . . clearly set[ting] forth the method used to calculate [the plaintiff's] monthly benefit as well as the amount of his monthly earnings . . . provided clear notice of a repudiation of higher benefits" and holding that, "[a]t this point, [his] claim accrued").

In *Miller*, the Third Circuit explained that "the need for [the plaintiff] to be vigilant was triggered only when his receipt of benefits alerted him that his award had been miscalculated." *Miller*, 475 F.3d at 516. Sun Life's decision regarding Faciane's 2017 administrative appeal—which Faciane argues in his present motion is the point at which his claim accrued—is irrelevant. Under *Miller*, the standard is not when Faciane's claim for adjustment or recalculation was formally or actually

10

denied. And the Third Circuit's approach does not require that Sun Life's letter "state a clear and final denial of any claim to adjust benefits."[31] Rather, the Court need only consider whether Sun Life clearly repudiated Faciane's rights under his ERISA plan, which, as explained herein, it did in its March 2008 letter. *See Haase v. Metro. Life Ins. Co.*, 198 F. Supp. 3d 412, 430 (E.D. Pa. Aug. 1, 2016) ("*Miller* suggests that the claim accrued when Plaintiff received the first check with erroneously calculated benefits. . . ."); *Martin*, 2013 WL 3354431, at *6 (applying *Miller* to hold that the limitations period for the plaintiff's claim began to run when he first received the letter approving his benefits, despite the plaintiff's arguments that the letter did not include a description of the defendant's methodology and that the plaintiff's salary varied from month to month, making it difficult to know whether the benefit amount was correct).

**B.**

In a similar fashion, the Second Circuit has held that a benefits recipient will be considered to have notice of a miscalculation "when there is information available to the [recipient] to assure that he knows or reasonably should know of the miscalculation." *Novella v. Westchester Cty.*, 661 F.3d 128, 147 (2d Cir. 2011). This is the standard the Court applied in its order granting summary judgment in favor of Sun Life.[32] The Second Circuit deemed its method "consistent with the Third Circuit's reasoning in *Miller*," which the Second Circuit read as endorsing a "reasonableness

---

[31] R. Doc. No. 26-1, at 19.
[32] See R. Doc. No. 23, at 10.

11

approach." *Id.* at 147. Like the court in *Miller*, the *Novella* court rejected a theory of accrual under which "a limitations period does not begin to run until a prospective class member inquires about the calculation of his benefits and the Plan rejects his claim." *Id.* at 146 (internal quotation and citation omitted).

The Second Circuit has described its approach as a "case-by-case reasonableness inquiry." *Id.* at 147. After adopting this new standard, it remanded the case before it to allow the lower court to determine "when each plaintiff . . . knew or should have known that the Fund had miscalculated his Disability Pension payments." *Id.* at 148. The Second Circuit noted that "simply receiving a lower pension payment is not enough to put a pensioner on notice of a miscalculation." *Id.* "Where, however, the miscalculation is . . . 'readily . . . discoverable from information furnished to pensioners by the pension plan,' a court may conclude that the participant had enough information at the time of the first payment of benefits to assure that he reasonably should have known of the miscalculation." *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 206 (2d Cir. 2017) (quoting *Novella*, 661 F.3d at 147 n.22).

Unlike the plaintiffs in *Obserg*, Faciane did not "[have] to make a sophisticated chain of deductions about the meaning of the information on [his] statements" or the information in the letter he received from Sun Life. *Osberg*, 862 F.3d at 207. In fact, Faciane's complaint describes the error in his award as fairly simple—a "miscalculat[ion] [of] his Total Monthly Earnings" based on an inaccurate input.[33] In addition to "simply receiving a lower pension payment," Faciane was given an

---

[33] R. Doc. No. 1, at 4.

12

explanation of *how* the payments were calculated. Furthermore, at the time he received Sun Life's letter, Faciane had access to the information that later revealed the supposed error, and he "alleges no legally sufficient basis for [his] failure to review these documents many years earlier." *Moses v. Revlon, Inc.*, No. 15-4144, 2016 WL 4371744, at *4–5 (S.D.N.Y. Aug. 11, 2016) (holding that the plaintiff's ERISA claim was time-barred under *Novella*).

There is also evidence that Faciane was suspicious of the accuracy of his claims well before he filed an administrative appeal. He filed electronic claims notes with the Court, which document, among other things, Sun Life employees' correspondence with Faciane as a claimant.[34] The Court noted in its order granting summary judgment that "these notes show that Faciane was questioning Sun Life's calculation of his long-term disability benefit as early as April or May 2008."[35]

Courts applying *Novella* have held that plaintiffs who "repeatedly seek[ ] out more information" about how their benefits are calculated will be assumed to have been on notice that they may not be receiving a full or accurate award. *See*, *e.g.*, *DePasquale v. DePasquale*, No. 12-2564, 2013 WL 789209, at *13 (E.D.N.Y. March 1, 2013). Faciane therefore "should have discovered the injury that is the basis of this claim" well before the statute of limitations had run. *Id*.

---

[34] R. Doc. No. 19-2. The Court addressed evidentiary issues related to these notes in its original order, and neither party disputes the Court's use of this evidence. R. Doc. No. 23, at 11–13 n.28.
[35] R. Doc. No. 23, at 13 (citing R. Doc. No. 19-2, at 5).

Faciane disputes any contention of clear repudiation based on the language in Sun Life's letter approving Faciane's benefits. That letter, however, explains the methodology Sun Life used to calculate his basic monthly earnings.[36] While the letter may have thus indicated the possibility of later recalculation based on the receipt of new information, Faciane does not suggest that new information led to a subsequent inaccurate recalculation. Faciane's sole contention is that the benefits were miscalculated from the "*inception* of his claim" and based on information Sun Life used *in its initial calculation*.[37] His challenge, as this Court has explained, is based exclusively on sources that were available to him and Sun Life when he received the initial calculation of his award. The Court thus concludes that Faciane "reasonably should [have known] of the miscalculation" when he received the letter. *Novella*, 661 F.3d at 147.

## VI.

The Court has embraced the "reasonableness"-type approaches adopted by the Second and Third Circuits with respect to benefits miscalculation claims brought under ERISA. *See Novella*, 661 F.3d at 147 (explaining that its method is consistent with the Third Circuit approach and characterizing both as guided by considerations of "reasonableness"). Applying either of these approaches to the present case, Faciane's claim is time-barred. Additionally, Faciane has presented no new

---

[36] *See generally* R. Doc. No. 6-3.
[37] *See* R. Doc. No. 6-4, at 1 ("Sun Life has incorrectly used the base benefit rate of $3,422.94 in administering Mr. Faciane's benefits. . . . [A]s a result of the errors in calculating Mr. Faciane's benefits . . ., *his benefits have been underpaid since the inception of his claim*.") (emphasis added).

14

arguments that persuade the Court to adopt a different standard or deviate from its conclusion that Faciane's claim is untimely. Reconsideration is an "extraordinary remedy," and Faciane has not demonstrated that it is warranted here. *Templet*, 367 F.3d at 479 (citation omitted).

Accordingly,

**IT IS ORDERED** that Faciane's motion for reconsideration is **DENIED**.

New Orleans, Louisiana, July 12, 2018.

                              **LANCE M. AFRICK**
                        **UNITED STATES DISTRICT JUDGE**